**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**January 12, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

IRA TUCKER,

        Petitioner - Appellant,

v.

MICHAEL MURPHY, Warden,
Wyoming Medium Correctional
Institution; and ATTORNEY
GENERAL, State of Wyoming,

        Respondents - Appellees.

No. 11-8086

(D. Wyoming)

(D.C. No. 2:10-CV-00206-ABJ)

**ORDER DENYING**
**CERTIFICATE OF APPEALABILITY**[*]

Before **LUCERO**, **ANDERSON**, and **GORSUCH**, Circuit Judges.

After examining the briefs and appellate record, this panel has determined

unanimously that oral argument would not materially assist in the determination

of this matter. See Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is

therefore ordered submitted without oral argument.

---

[*]This order is not binding precedent, except under the doctrines of law of
the case, res judicata, and collateral estoppel. The court generally disfavors the
citation of orders and judgments; nevertheless, an order and judgment may be
cited under the terms and conditions of 10th Cir. R. 36.3.

Petitioner and appellant Ira Tucker pled guilty to two counts of possession of controlled substances with intent to deliver, in violation of Wyo. Stat. Ann. § 35-7-1031(a)(i) and (a) (ii).[1] When his state court proceedings proved unsuccessful in challenging his convictions, he filed a petition for a writ of habeas corpus in federal district court. The respondent, Warden Michael Murphy, filed a partial motion to dismiss and a motion for summary judgment, which the district court granted. The district court denied a certificate of appealability ("COA"). Mr. Tucker asks us for a COA to enable him to appeal the dismissal of his case. For the following reasons, we deny him a COA and dismiss this matter.

As did the district court, we take the basic facts from the state court decision:

> On the afternoon of December 8, 2006, the Sheridan County Sheriff's Office received word that an individual wished to provide information concerning the use of controlled substances in the county. Deputies Ryan Mulholland and Boot Hill interviewed the man. In the course of the interview, the man told the deputies that he had purchased methamphetamine from a man named "Ira" on two occasions. He gave the deputies "Ira's" telephone number and told them that "Ira" drove a black Jeep Cherokee and, when he made trips into the Sheridan area, frequented the residence of an individual whose name the deputies recognized from prior controlled substance investigations.
>
> The following evening, Deputy Mulholland received a call from the informant advising him that "Ira" was in town. Deputies Mulholland and Hill went to the addresses the informant provided but were unable to locate a vehicle matching the description of "Ira's" vehicle. They returned later with the informant and observed the

---

[1]One count related to marijuana and one count related to methamphetamine.

vehicle at one of the locations.  Dispatch confirmed the vehicle license belonged to Mr. Tucker and was registered to a 1996 black Jeep Cherokee.  Deputies also obtained a copy of  Mr. Tucker's driver's license with his photograph.

A few days later, the informant went to the Sheridan office of the Division of Criminal Investigation (DCI) and placed a recorded phone call to Mr. Tucker.  Deputy Hill monitored and recorded the call during which Mr. Tucker said that he had been to Sheridan and left some "stuff" and would be back again the next weekend.  He also said that if the informant wanted "green" he could get "QP650."  Based upon his training and experience as a drug task force officer, Deputy Hill understood this to mean that Mr. Tucker could provide the informant with a quarter pound of marijuana for $650.

Several months later, Deputy Mulholland received another phone call from the informant advising him that Mr. Tucker had called again and would soon be on his way to Sheridan.  Deputy Mulholland asked the informant to place another recorded telephone call to Mr. Tucker.  The informant agreed and met with Special Agent Michael Hamilton to place the call.  Special Agent Hamilton monitored the conversation during which Mr. Tucker stated that he normally charged 200 by the "O" and used the word "kind."  Based upon his training and experience, Special Agent Hamilton understood the first reference to mean that Mr. Tucker charged $200 per ounce for marijuana and the term "kind" to refer to the grade of the marijuana.  Mr. Tucker also told the informant that if he invested in Mr. Tucker's "little corporation," Mr. Tucker would "wake him up." Special Agent Hamilton was not familiar with the phrase "wake him up" and the informant advised him it meant Mr. Tucker would provide him with methamphetamine.

On the basis of what they heard during the recorded phone calls, DCI and the sheriff's office made plans to stop and search Mr. Tucker's vehicle as he approached Sheridan.  Agents from Casper who had been conducting surveillance of Mr. Tucker's Casper residence advised that he left his home with a female companion in a white Pontiac with a black bra.  Deputy Mike Gale parked his patrol car at an I-25 exit ramp south of Sheridan and waited.  When he saw a white Pontiac with a black bra and two occupants approaching from the south, he confirmed the license plate as belonging to Mr. Tucker

and stopped the vehicle. He told Mr. Tucker that there had been a traffic complaint involving a vehicle like the one he was driving. Deputy Mike Rogers arrived with his dog and had the dog perform an air sniff around the outside of Mr. Tucker's vehicle. The dog alerted to the rear of the vehicle. Deputy Roger searched the rear of the vehicle and found substances that later tested positive for marijuana and methamphetamine.

Tucker v. State, 214 P.3d 236, 238-39 (Wyo. 2009).

As indicated, the State of Wyoming charged Mr. Tucker with two counts of possession of controlled substances with intent to deliver. Mr. Tucker filed a motion to suppress the evidence seized from his car, arguing there was no reasonable articulable suspicion to justify the stop because he had committed no traffic violation. He also claimed the drug dog was not reliable. The state filed a response stating that it did not rely upon a traffic violation or the drug dog to justify the stop and search, but, rather, it based the stop and search on information learned from the confidential informant. The state court denied Mr. Tucker's motion to suppress.

Mr. Tucker entered a conditional plea of guilty to the two counts of possession, preserving his right to appeal the denial of his suppression motion. In his appeal to the Wyoming Supreme Court, Mr. Tucker argued: (1) the traffic stop, search and subsequent arrest were illegal as there was no probable cause; (2) he was denied due process of law because of the conduct of the prosecutor who included misrepresentations in the affidavit supporting the Information, because

-4-

he was afforded only limited access to the discovery in his case, and delays were caused by changes in counsel; and (3) the arrest warrant was defective.

The Wyoming Supreme Court affirmed Mr. Tucker's convictions, finding that the officers had probable cause to arrest him and search his car, his due process rights were not violated by the prosecutor, and the arrest warrant was not defective. The court refused to consider the due process claims based on access to discovery and delay resulting from a change in counsel, because neither issue was presented to the district court or properly preserved for appeal in the conditional guilty plea.

Mr. Tucker then filed a petition for post-conviction relief with the state district court, arguing: (1) he received ineffective assistance of trial and appellate counsel; (2) he did not waive the argument regarding not receiving a preliminary hearing in the circuit court by failing to raise that issue on appeal; (3) the Information was insufficient to adequately give him notice of the charges against him; (4) his Fifth Amendment rights were violated when he was charged with two violations of the same statute; (5) there was insufficient evidence to prove the element of intent; (6) his guilty plea was involuntary because the charges in the Information were changed after an agreement was reached and the prosecution and the district court did not abide by the terms of the plea agreement; (7) he did not receive an initial appearance within seventy-two hours after his arrest; and (8) his right to a speedy trial was violated.

The state district court denied Mr. Tucker's request for post-conviction relief. It concluded that the Fifth Amendment claim (# 5 above) and the claim relating to whether his guilty plea was voluntary (#6 above) were procedurally barred pursuant to Wyo. Stat. Ann. § 7-14-103(a)(I), because they could have been raised on direct appeal but were not, in fact, raised. The court also concluded that there was no merit to the ineffective assistance of counsel claims, and that the remaining claims were waived by virtue of Mr. Tucker's guilty plea. The Wyoming Supreme Court denied review.

Mr. Tucker then filed the instant petition for a writ of habeas corpus with the federal district court, arguing twelve issues: (1) ineffective assistance of trial counsel; (2) ineffective assistance of appellate counsel; (3) the prosecutor failed to give him sufficient notice of the corrective Information; (4) the state district court lacked jurisdiction over him as there was never a preliminary hearing regarding the corrective Information; (5) his due process rights were violated by the amendment of the Information; (6) the state failed to present sufficient evidence of the element of intent; (7) his guilty pleas were not voluntary due to the filing of a corrective Information; (8) his guilty pleas were coerced; (9) his rights were violated due to the timing of his initial appearance; (10) his speedy trial rights were violated; (11) the prosecutor engaged in misconduct; and (12) his right against double jeopardy was violated when he was charged with, and sentenced for, violating the same statute in two different ways.

In a 32-page carefully and thoroughly reasoned opinion, the district court explained why each issue was either procedurally defaulted or meritless, applying the standards of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). The court also denied Mr. Tucker's motion for reconsideration.

With respect to the ineffective assistance of trial counsel claim, the court concluded that this issue was not raised either on direct appeal or in Mr. Tucker's state post-conviction action. As a result, it was not exhausted, but any state court would find such a claim procedurally barred under state law, and it was therefore procedurally defaulted in federal court. See Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).[2]

Regarding his claim that he did not have proper notice of the corrective Information, the court noted that, while he had raised this issue in his petition for post-conviction relief in state court, the state court found it waived by virtue of

---

[2]Despite the court's conclusion that Mr. Tucker failed to raise the issue of ineffective assistance of trial counsel as a "stand-alone" claim in his state post-conviction petition, our review of the record indicates that he did, in fact, raise this issue to some extent, and the state court rejected it on its merits. In his state post-conviction proceeding, the state court held that his ineffectiveness claims "lack cogent argument and merely speculate that counsel was ineffective." Order at 3, R. Vol. 1 at 58.

Nonetheless, applying the standards of AEDPA directly to the state court's decision, we would find no basis for granting Mr. Tucker a COA on this issue. This is especially true, given the doubly deferential standard applicable to an ineffectiveness claim in tandem with AEDPA's review standards. See Premo v. Moore, 131 S. Ct. 733, 740 (2011); see also Knowles v. Mirzayance, 556 U.S. 111, ___ (2009); Dockins v. Hines, 374 F.3d 935, 938 (10th Cir. 2004) (holding that "AEDPA's deferential treatment of state court decisions must be incorporated into our consideration of [his] request for [a] COA").

his guilty plea. The federal district court similarly concluded it was waived by Mr. Tucker's guilty plea, citing Tollett v. Henderson, 411 U.S. 258 (1973). In Tollett, the Supreme Court observed that:

> a guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Id. at 267. Mr. Tucker's claim about notice of the corrective Information is clearly waived.

With respect to his claim that the failure to hold a preliminary hearing deprived the state court of subject matter jurisdiction, the district observed that state law did not support the argument that the failure to hold a preliminary hearing was a jurisdictional matter. It then noted that the state district court held that any argument regarding a preliminary hearing was waived by Mr. Tucker's guilty plea, and that any such argument was similarly waived by his guilty plea in federal court. See Tollett, 411 U.S. at 267.

As to Mr. Tucker's claim that his due process rights were violated by the amendment of the Information, the district court held that the Information was amended before Mr. Tucker pled guilty. Thus, like his previous arguments, this argument has been waived for purposes of federal habeas corpus review.

-8-

Regarding his argument that the state did not present sufficient evidence of his intent to commit the crime charged, the district court determined that this issue was also waived by Mr. Tucker's guilty plea. Moreover, this issue raises a matter of state law only, and federal habeas review does not apply to purported violations of state law.

With respect to his argument that his guilty plea was not voluntary because the amended Information was filed just before the change of plea hearing, the district court noted that this issue could have been raised, but was not, before the Wyoming Supreme Court on direct appeal. On that basis, the state court held the issue procedurally barred, and it is therefore procedurally defaulted in federal court.

For essentially the same reason, the district court held Mr. Tucker's claim that his guilty plea was coerced was procedurally defaulted in federal court. And the court found Mr. Tucker's claim that his rights were violated because he did not receive his initial appearance within seventy-two hours of his arrest was waived by his guilty plea, and, in any event, presented only an issue of state law. Mr. Tucker's speedy trial claim was deemed similarly waived by his guilty plea.

As to Mr. Tucker's claim that all of the previous issues support a finding of prosecutorial misconduct, the district court found this issue not exhausted because Mr. Tucker failed to raise it on direct appeal or in his state post-conviction petition.

Finally, the district court held that, inasmuch as Mr. Tucker's double jeopardy claim had not been raised before the Wyoming Supreme Court, it was procedurally barred. It was therefore procedurally defaulted in federal court.

This left, as the only viable claim, Mr. Tucker's claim that his appellate counsel was ineffective in failing to raise the issues listed above. As the district court below observed, the "state district court, without significant elaboration, found the claim had no merit." Order at 22, R. Vol. 1 at 607. The court went on to consider "whether the state district court decision was contrary to, or an unreasonable application of, clearly established federal law." at 22-23 (citing 28 U.S.C. § 2254(d)). Applying the standards of Strickland v. Washington, 466 U.S. 668 (1984), the court held that the state district court's decision was not "contrary to, or an unreasonable application of, clearly established federal law."

Mr. Tucker now seeks a COA to enable him to challenge the district court's conclusions. He frames the issues on appeal as follows: (1) was he given a full and fair opportunity to litigate his Fourth and Fourteenth Amendment claims on appeal, "without a complete transcript of record forwarded to the Supreme Court for appeal?"; (2) were Mr. Tucker's Fourth and Fourteenth Amendment rights violated when the district court "dismissed the habeas [petition] without ruling on the supplemental pleading"; (3) did the district court err when it "did not allow the petitioner the opportunity to fully develop his claim that the trial court lacked subject matter jurisdiction by proceeding without a valid probable cause affidavit

-10-

to support the arrest warrant?"; and (4) did the court err when it ruled the "state court had not exhausted the 6th Amendment issue of ineffective assistance of trial counsel as a 'stand alone' claim?" Appellant's Br. at 6, 10, 20, 23.

To obtain a COA, Mr. Tucker must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c). This standard requires a "demonstration that . . . includes showing that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (internal quotation marks omitted). When the district court rules on the merits of a constitutional habeas claim, the petitioner must show that "reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Id. Where the district court rules on procedural grounds, a COA may issue when the petitioner shows that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and . . . whether the district court was correct in its procedural ruling." Id.

No reasonable jurist could dispute the district court's conclusion that Mr. Tucker's claims were either procedurally defaulted or meritless.[3] We cannot

_____

[3]We agree with the district court's observation that Mr. Tucker's claims "are not particularly well-defined." Order at 7, R. Vol. 1 at 592. To the extent Mr. Tucker attempts to present new issues in this application for a COA, we would deem them waived. See United States v. Windrix, 405 F.3d 1146, 1156

(continued...)

improve on the district court's analysis of Mr. Tucker's claims, except for our observation that his claim of ineffective assistance of trial counsel may have been exhausted but is, in any event, meritless.  Accordingly, for substantially the reasons set forth in the district court's decision, we agree that a COA should not issue and this matter should be dismissed.

For the foregoing reasons we DENY a COA and DISMISS this matter.

ENTERED FOR THE COURT


Stephen H. Anderson
Circuit Judge

---

[3](...continued)
(10th Cir. 2005) (declining to address an issue that the party "did not argue in district court," because "in general we will not consider an argument not raised below," particularly where a party has "not argue[d] on appeal that any special circumstance requires us to address this contention despite lack of preservation below").